**CENTRAL SCIENTIFIC CO., Plaintiff,**

v.

**MOORE–MILFORD CORPORATION,**
**Defendant.**

**No. 58 C 705.**

United States District Court
N. D. Illinois, E. D.
Jan. 5, 1961.

Mann, Brown & McWilliams, Thomas F. McWilliams and Ferd Bing, Chicago, Ill., for plaintiff.

Mason Kolehmainen, Rathburn & Wyss, M. Hudson Rathburn, Walther E. Wyss and Warren D. McPhee, Chicago, Ill., for defendant.

PERRY, District Judge.

This is an action for infringement of United States Letters Patent No. 2,816,-437 issued on December 17, 1957 to plaintiff, Central Scientific Co., as assignee of Carl S. Hornberger and William R. Lewis. Defendant counterclaimed for a declaratory judgment of non-infringement and invalidity. Its counterclaim, however, was later withdrawn except insofar as it relates to claims 15, 16 and 17, being the three claims in suit.

The cause having come on for trial before the court, and the court having considered the evidence, the testimony of witnesses, (including that of expert witnesses who pointed up their testimony by the use of charts), the documentary and physical exhibits introduced, and the briefs of counsel, makes the following findings of fact and conclusions of law:

Findings of Fact.

1. Plaintiff, Central Scientific Co., is an Illinois corporation having its principal place of business in Chicago, Illinois.

2. Defendant, Moore-Milford Corporation, is an Illinois corporation having its principal place of business in Skokie, Illinois.

3. Plaintiff is the owner of United States Letters Patent No. 2,816,437, granted to Hornberger et al. on December 17, 1957.

4. Defendant, subsequent to December 17, 1957, sold within the Northern District of Illinois, Eastern Division, moisture testers identical with Defendant's Exhibit 10 under the trade designation "I-R Moisture-Matic Balance." Defendant sells several types of moisture testers in addition to the accused moisture tester, including a more expensive so-called "electric tester" of which it sells eight to ten for every one of the accused devices that it sells.

5. The first "I-R Moisture-Matic Balance" was sold by defendant in the fall

of 1956 more than a year before the patent in suit was granted.

6. Plaintiff alleges that the "I-R Moisture-Matic Balance" infringes claims 15, 16 and 17 of Hornberger et al. patent 2,816,437.

7. Claims 15, 16 and 17 of the patent in suit are directed broadly to moisture testers wherein a sample is weighed before and after heating thereof. Moisture testers of this type were well known in the art long prior to the filing date of the patent in suit.

8. Plaintiff has manufactured and sold moisture testers substantially identical with Figs. 1 to 11 of the patent in suit under the trade designation of "Cenco Moisture Meter" and during approximately a ten-year period from 1951 to 1960, sold only 3,902 of such moisture testers.

9. The Hornberger et al. patent in suit was filed in the Patent Office on June 8, 1955 as a continuation-in-part of an earlier, now abandoned, application filed on September 30, 1949. For over eight years, from September 30, 1949 until August, 1957, the patent attorneys for Hornberger et al. attempted to obtain patent coverage on the "Cenco Moisture Meter".

10. The application which resulted in the Hornberger et al. patent in suit had been on file in the Patent Office in one form or another for more than seven years when plaintiff in February, 1957 obtained one of defendant's moisture testers. The patent attorneys for Hornberger et al. thereafter, i. e. in August, 1957, for the first time submitted the claims which became claims 15, 16 and 17 of the patent in suit. These claims were allowed a few days thereafter.

11. Claims 15, 16 and 17 of the patent in suit are combination claims directed broadly to a moisture testing device combining an old and well-known heater means with a weighing device of the type requiring "balancing a beam" both before and after heating of a specimen on the weighing device to determine the moisture loss. Claim 17 specifically calls for a torsion balance-type weighing device while claims 15 and 16 are more broadly drawn to also cover an equivalent spring-type weighing device.

12. Moisture testers of the type wherein a specimen or sample of material is first weighed, then heated to drive off moisture contained therein and then reweighed to determine the loss in weight have been known since at least 1891 when German patent 56,833 to Barth was granted. Between that time and the filing date of the patent in suit, a wide variety of moisture testers were known using many different weighing devices and many different heaters.

13. Defendant's Exhibit J is a chart depicting eight prior art moisture testers, not one of which was considered by the Patent Office in connection with the patent in suit and all of which show moisture testers which, like the patent in suit, combine heater means for heating a specimen or sample and weighing means to determine the weight before and after heating. Most of these prior art weighing devices, like the patent in suit, provide a direct reading of moisture in percentage of the whole specimen or sample. The weighing devices of prior art moisture testers have comprised (1) beam-type balances with movable weights represented by German Barth patent 56,833, Andersen et al. patent 2,667,064, Prinz patent 694,782; (2) beam-type balances with interchangeable weights represented by Emerson patent 1,089,-826; (3) spring balances represented by McIlvaine patent 2,633,018; and (4) torsion balances represented by Green patent 2,575,169, A. S. Aloe Co. Catalog No. 102, Brock British patent 604,863 and the Liplavk Russian article. The heater means of prior art moisture testers have included (1) infrared lamps (Andersen et al. 2,667,064 and Brock British patent 604,863); (2) open flames (Barth German patent 56,833); (3) dielectric heaters (Liplavk Russian article); (4) ovens (Green 2,575,169 and A. S. Aloe Co. Catalog No. 102) and (5) sheathed electrical heating units (McIlvaine 2,633,018).

14. Torsion balances of two different types were well known long prior to the effective filing date of the Hornberger et al. patent in suit. Torsion balances substantially identical to that of the patent in suit are shown by Ahrndt et al. patent 2,124,968, Craig et al. patent 2,417,392 and Gorbach patent 2,613,926. Torsion balances of a somewhat different type, but still employing a tensioned torsion wire supporting a beam to be balanced at each weighing operating are shown in Roeder patent No. 262,907, Conway patent No. 1,168,929, Michalis patent No. 1,167,584 and Catalog No. 102 of A. S. Aloe Company.

15. The Ahrndt et al. patent No. 2,-124,968 discloses a torsion balance almost identical with that of the patent in suit having a tensioned torsion wire, a stationary datum, a lever carried by the tensioned torsion wire, a specimen supporting member carried by the lever and maintained by the torsion wire at an initial position of elevation with respect to the datum, means for applying predetermined torsion to the tensioned wire which torsion is exactly counterbalanced by the quantum specimen placed on the supporting surface whereby the latter is in said initial position, and means for measuring reduction in said predetermined torsion required to return said surface to said initial position after a loss of weight of the specimen on the supporting surface.

16. The Brock British patent No. 604,863 specifically teaches that a torsion balance may be used with an infrared lamp in a moisture measuring apparatus.

17. The Liplavk Russian article describes a moisture tester combining a torsion balance with a dielectric heater.

18. Both the Brock British patent and the Liplavk article completely anticipate claims 15, 16 and 17 of the patent in suit. The Patent Office Examiner could not have considered the Brock patent in connection with claims 15, 16 and 17 or these claims never would have been allowed. The Examiner did not consider the Liplavk article.

19. It would have been obvious in 1949 for one having ordinary skill in the art to associate a torsion balance, such as that of Ahrndt et al. patent 2,124,968, with an infrared heater, such as that of McIlvaine patent 2,633,018 or Andersen et al. patent 2,667,064, to produce a moisture testing apparatus precisely as defined by claims 15, 16 and 17 of the patent in suit.

20. The heater means of the patent in suit, namely, the infrared lamp, functions entirely independently of the torsion balance weighing device. Both plaintiff's and defendant's experts testified that the heater means operates in exactly the same manner whether separate from or combined with the torsion balance, and the torsion balance weighing device operates exactly the same whether combined with or separate from the heating means.

21. Both the torsion balance of the patent in suit and defendant's torsion balance operate completely independently of the heater means. This was demonstrated by plaintiff's counsel in weighing on the torsion balance of the patent in suit matches and coins, determining the weight loss by removing certain of the matches, and measuring the percentage loss in weight, all without operating the heater means. Plaintiff's expert admitted that the match weighing operation was a fair demonstration of plaintiff's moisture tester.

22. Defendant's expert demonstrated that, with the moisture tester built in accordance with the patent in suit, the moisture tester could be separated into two parts simply by the removal of four accessible screws one part being the heating lamp and the other part being the torsion balance weighing device, and that each part operated independently of the other in the same manner as when associated together.

23. Plaintiff's expert described what he considered to be all the unusual or novel features of the moisture tester of the patent in suit and admitted that not a single one of these unusual or novel features or any combination thereof is included in the three claims in suit.

24. The Precision-Freas Conditioning Oven, described in Catalog No. 102 of A. S. Aloe Company comprises a heating means (oven) to heat the specimen to drive off moisture whereby reweighing of the specimen after heating permits a ready determination of the moisture content thereof. The uncontroverted testimony supplemented by defendant's Exhibit U establishes that every element of the three claims in suit is present in the Precision-Freas Conditioning Oven. The Precision-Freas Conditioning Oven has a tensioned torsion wire, a stationary datum, a lever carried by said wire, a specimen supporting surface carried by said lever and maintained by said wire at an initial position of elevation with respect to said datum, means for applying predetermined torsion to said wire which torsion is exactly counterbalanced by the quantum of specimen placed on the supporting surface whereby the latter is in said initial position, heater means for removing moisture from the specimen whereby said surface rises from said position and means for measuring reduction in said predetermined torsion required to return said surface to said initial position.

25. Claims 15 and 16 of the Hornberger et al. patent in suit are more broadly drawn than claim 17, and, although they read on moisture testers employing a torsion balance weighing device, they also cover moisture testers employing a particular form of spring balance. As admitted by plaintiff's expert, spring balances are the equivalent of torsion balances.

26. Spring balances in association with heaters were old prior to Hornberger et al., as shown by McIlvaine patent 2,633,018. Heaters in association with weighing devices were old long prior to Hornberger et al. as shown by Andersen et al. patent 2,667,064, Barth German patent 56,833, Prinz patent 694,-782, Altmann British patent 16,681 and Emerson patent 1,089,826. All of these weighing devices are equivalent in that each of them operates in substantially the same way to produce substantially the same result.

27. If the single word "spring" contained in claims 15 and 16 of the patent in suit is disregarded each and every element of these two claims is disclosed in Andersen et al. patent No. 2,667,064, and in the Barth German patent No. 56,833. Each of these prior art patents provides a device for measuring percentage moisture content of a specimen, comprising a specimen supporting surface mounted for substantially vertical movement, means normally opposing downward movement of said supporting surface, a relatively fixed datum, means for applying a predetermined force to said surface opposing gravity, which force is exactly counterbalanced by the quantum of specimen placed on said surface, means for heating the specimen while on said supporting surface to thereby drive moisture from the specimen and cause said supporting surface to rise relative to said fixed datum, means for returning said supporting surface to the precise position it occupied prior to said heating and means for measuring the force required to return said supporting surface to said last-mentioned position. The substitution of spring means for other means, such as, levers and weights, would have been obvious in 1949 to one having ordinary skill in the art.

28. The claims in suit require that a predetermined force be applied to the specimen supporting surface opposing gravity, which force is exactly counterbalanced by the quantum of specimen which is placed on said surface. In the accused device, the predetermined force applied to the specimen supporting surface opposing gravity is never exactly counterbalanced by the quantum of specimen placed on said surface. Defendant's expert clearly demonstrated this to the Court by showing that when the stationary resilient switch member at the rear of the accused device was lifted after the beam had come to rest, the specimen supporting pan moved downwardly a significant distance, in-

dicating that the quantum of specimen on said specimen supporting surface was not exactly counterbalanced by the predetermined force applied to said surface.

29. Claims 15, 16 and 17 of Hornberger et al. require a relatively fixed or stationary datum which is absent in defendant's accused device.

30. The cooperation between the mechanical elements of claims 15, 16 and 17 of the patent in suit is exactly the same as the cooperation between the corresponding elements in prior art patents, such as Andersen, et al., Barth, Prinz, Altmann and in the Precision-Freas Oven shown in the A. S. Aloe Company Catalog No. 102. The claims in suit are directed to an old and exhausted combination.

31. Certain assertions, made during the prosecution of the applications in the United States Patent Office (maturing into the patent in suit) were, in view of the prior art, misleading and contrary to fact. For example,—

(a) The statement, appearing at page 33 of defendant's Exhibit D, that "The machine forming the subject matter of this application is the end of a long search by many of the best qualified experts in the art. It is entirely new with these applicants that a specimen is first weighed in a pan; then heat is applied; and the loss of weight by evaporation is measured directly in percentage with the whole, as stated on page 2, beginning line 10."

(b) The statement, appearing at page 36 of defendants Exhibit D, that "All the old testing apparatus and methods required the services of experts handling analytical balances and calculating percentages."

Most of the prior art moisture testers could be easily and quickly operated by an unskilled person without mental calculations of any kind.

32. The Hornberger et al. patent did not satisfy a "long felt need" nor did Hornberger et al. accomplish what experts in the field had long sought. The evidence shows that when a need for direct reading moisture testers arose after World War II many others provided such devices, including McIlvaine, Andersen, et al., Green, Brock and Liplavk, all between 1945 and 1949.

Conclusions of Law.

1. This court has jurisdiction of the subject matter and of the parties hereto.

2. Plaintiff, Central Scientific Co., is, and has been the owner of United States Letters Patent No. 2,816,437 since the patent was issued to the plaintiff on December 17, 1957.

3. This court having found claims 15, 16 and 17 of the Hornberger, et al. patent in suit to be invalid, it follows that those claims cannot be infringed by defendant's I-R Moisture-Matic Balance.

4. The alleged commercial success of plaintiff's moisture tester will not serve to validate otherwise invalid claims.

5. The presumption of validity provided for by statute has been rebutted with respect to claims 15, 16 and 17.